September 26, 1977

## 78-86  MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Consultants—Employment to Assist Presidential Nominee at His Confirmation Hearing (5 U.S.C. § 3190, 31 U.S.C. § 628)

This responds to your request for our opinion as to the legality of paying a consultant (an attorney) from funds appropriated to the White House Office to assist a nominee to a regulatory agency in his confirmation hearing and to prepare the individual to assume his position, if appointed. The question appears to be a novel one.

Authority to hire consultants is found in 5 U.S.C. § 3109 (1976) which provides in pertinent part:

\* \* \* \* \*

(b) When authorized by an appropriation or other statute, the head of an agency may procure by contract the temporary (not in excess of 1 year) or intermittent services of experts or consultants or an organization thereof . . . .

The current appropriation for the White House authorizes the hiring of consultants in the following terms:

For expenses necessary for the White House Office as authorized by law, including not to exceed $3,850,000 for services as authorized by 5 U.S.C. 3109, at such per diem rates for individuals as the President may specify and other personal services without regard to the provisions of law regulating the employment and compensation of persons in the Government service.[1]

The Civil Service Commission construes § 3109 as authorizing the employment of consultants to obtain advice of a specialized nature unavailable within the agency itself, to obtain outside viewpoints, or to acquire the services of experts who are not needed or available full time.[2] Conversely, the Commis-

---

[1]Executive Office Appropriations Act, 1977, 90 Stat. 966.

[2]*Federal Personnel Manual,* Ch. 304, par. 1-3a. We do not necessarily imply that the White House Office is subject to the Civil Service Commission's jurisdiction in this respect by citing its

(Continued)

sion disapproves of the use of consultants to do what can be done as well by regular employees.[3] Section 3109 would thus appear to encompass the employment of outside counsel to assist the nominee if, in your judgment, this would provide expert or professional services not available within the White House Office.

But § 3109 does not in itself resolve the problem. We must consider whether services of this type are subject to any other statutory prohibition. Funds appropriated to the White House Office are subject, as are agency funds, to the general restriction of 31 U.S.C. § 628 (1976) which provides:

> Except as otherwise provided by law, sums appropriated for the various branches of expenditure in the public service shall be applied solely to the objects for which they are respectively made, and for no others.

With respect to a general appropriation for necessary expenses, the Comptroller General has consistently ruled that expenditures are authorized ''if reasonably necessary or incident'' to the activity for which the funds are appropriated. *See, e.g.,* 50 Comp. Gen. 534 (1971); 29 Comp. Gen. 419 (1950). However, expenditures primarily for the personal benefit of present or prospective employees, rather than for a governmental activity, have been disapproved.[4] The question is whether assisting a nominee is a ''reasonably necessary'' activity of the White House Office.

To our knowledge, neither the Comptroller General nor any other authority has passed on the question. No objection has been raised to the practice of the Department of Justice of utilizing its own personnel to assist nominees to positions in the Department and to the Federal bench by briefing them on their prospective duties and by on occasion presenting their background to the Senate in the best light. An important function of the White House Office is to assist the President in presenting his viewpoints to Congress. This would seem to cover reasonable advocacy of his nominations. It therefore appears that assisting a nominee to be confirmed can be viewed as an ordinary and necessary activity of the White House Office. If the issue were now to be raised with the Comptroller General, it may be that he would defer to this longstanding administrative practice, particularly since Congress is almost certainly aware of it. *Cf.* 38 Comp. Gen. 758, 767 (1959); 28 Comp. Gen. 673 (1950).

There is, however, a line of Comptroller General decisions holding that ''an officer or employee has on his shoulders the duty of qualifying himself for the

---

(Continued)
interpretation of the statute. The Commission's construction is merely the best available interpretation.

[3]*Federal Personnel Manual,* Ch. 304, par. 1-3b.

[4]For example, medical examinations of employees at Government expense may be provided without specific authorization when necessary to the safety of other employees or to prevent loss of services from occupational disease but not when there is no prospect of harm to the Government from the employee's illness. *Compare* 30 Comp. Gen. 387 (1951); 22 Comp. Gen. 32 (1942); with 33 Comp. Gen. 231 (1953). Similarly, special clothing or equipment may be provided at Government expense only if the Government, rather than the employee, receives the primary benefit from its use. *See* 45 Comp. Gen. 215 (1965); 3 Comp. Gen. 433 (1924).

performance of his official duties." 22 Comp. Gen. 460, 461 (1942). Thus, the Comptroller General has disapproved payment of bar admission fees,[5] reimbursement for preemployment examinations by private doctors,[6] and use of a general appropriation to employ a doctor to give preemployment examinations on a regular basis.[7] We doubt that these decisions apply to the present case because obtaining Senate confirmation for a Presidential appointment differs from ordinary employment. While assisting a nominee may serve the nominee's personal interest, it also advances the official interests of the Presidency. The confirmation process can therefore be viewed as more than simply personal qualification of the nominee. On that basis, we think that White House Office funds may be expended to protect the official interest involved.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] 51 Comp. Gen. 701 (1972); 47 Comp. Gen. 116 (1967); 22 Comp. Gen. 460 (1942).
[6] 31 Comp. Gen. 465 (1952).
[7] 22 Comp. Gen. 243 (1942).